UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23791-CIV-MOORE/TORRES

RALLY MANUFACTURING, INC.,

        Plaintiff/Counterclaim Defendant,

vs.

FEDERAL MOGUL CORPORATION,

        Defendant/Counterclaim Plaintiff.
_____/

## ORDER ON CLAIM CONSTRUCTION

THIS CAUSE came before the Court for a Claim Construction ruling under Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). The Court has carefully considered the Parties' briefing, arguments and evidence presented during the Markman hearing, and the pertinent portions of the record. The Court constructs the disputed terms in the following.

**I.     BACKGROUND**

This is a patent infringement case where Plaintiff Rally Manufacturing, Inc. ("Rally") is suing Federal Mogul Corporation ("Federal Mogul") for allegedly infringing upon U.S. Patent No. 6,279,746 (the "'746 patent") by importing, selling, distributing, and offering to sell packaging for windshield wiper blades. Rally's Complaint includes one count of patent infringement against Federal Mogul pursuant to 35 U.S.C. § 271 for alleged infringement of the '746 patent. Federal Mogul has brought counterclaims for false patent marketing, infringement of U.S. design patent D372,012, and seeks declarations that '746 patent is not infringed and that the '746 patent is invalid.

Rally, the owner of the '746 Patent, was issued the '746 Patent on August 28, 2001. The

'746 patent is a type of blister packaging for automobile windshield wiper blades. Sheet 2 of 7 ("Figure 2") as shown in the '746 patent is provided below, which sets forth a diagram of the '746 patent.



'746 Patent (ECF No. 48-1), Ex. A., Sheet 2 of 7.

The '746 patent was originally designed to address the high cost associated with customers returning windshield wiper blades. When customers returned the product to the local retailers, the costly plastic packaging would be opened and then have to be discarded. According to the '746 patent, its packaging can be opened and closed without destroying it, thereby saving costs when customers return a windshield wiper blade. In the '746 patent, there are 13 claims that are patented. The terms that are in dispute stem from claim 1. Claim 1 of the '746 patent states:

> What is claimed is:
> 1. A reclosable package comprising:
> a backing member;
> a body member having a first portion attached to a second portion via an integral hinge disposed there between;
> said first portion comprising side walls and a top face disposed on said backing member to define a merchandise compartment having an open end in one of said side walls;
> said second portion comprising side walls and a top wall disposed on said backing member to thereby define a closure for said open end, wherein said second portion pivots between an opened position where said merchandise compartment is exposed at said open end and a closed position where said merchandise compartment is closed by said second portion;
> a closure system for securing said second portion in said closed position, said closure system comprising at least one projection and at least one corresponding recess for receiving said at least one projection to define an interlocking friction-fit connection,
> wherein said backing member and said body member define an extended portion wherein said integral hinge is offset from said open end by a distance sufficient to include closure elements on said extended portion thereby interlocking said first portion to said second portion.

'746 patent, Ex. 1, at p. 12. The Parties are in dispute over six terms within claim 1, which are further discussed below.

## II.  ANALYSIS

### A.  Claim Construction

"A literal patent infringement analysis involves two steps: the proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly construed." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 38 F.3d 1111, 1115 (Fed. Cir. 2004). The terms that are used in a claim "are generally given their ordinary and customary meaning." Vitronics, 90

F.3d at 1582. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). In defining words in a claim, "courts should look to 'those sources available to the public that show what a person of skill in the art would have understood [the] disputed claim language to mean.'" Id. at 1314 (quoting Innova, 381 F.3d at 1116).

To construct patent terms, courts use the "intrinsic evidence of record . . . [which is] the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics, 90 F.3d at 1582. An important aspect in analyzing intrinsic evidence is the actual claim terms and how they define "'what it is that is patented.'" Phillips, 415 F.3d at 1312 (quoting Merrill v. Yeomans, 94 U.S. 568, 570 (1876)). In doing so, courts also address the context of how the term is applied in the claim. See Phillips, 415 F.3d at 1314.

Courts also review the specification and other claims that are provided in the patent to construe the terms. Phillips, 415 F.3d at 1314 (explaining that "[b]ecause claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims"). The terms construed should be "consistent with the specification, of which they are a part." Merck & Co., Inc. v. Teva Pharms USA, Inc. 347 F.3d 1367, 1371 (Fed. Cir. 2003). In addition, the prosecution history is part of the intrinsic evidence that may be considered when construing a claim. Phillips, 415 F.3d at 1317. The prosecution history is the "complete record of all the proceedings before the Patent and Trademark Office [("PTO")], including any express representations made by the applicant regarding the scope of the claims." Vitronics, 90 F.3d at 1582. "The purpose of consulting the

prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'" Chimie v. PPG Industries, Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005) (quoting ZMI Corp. v. Cardiac Resucitator Corp., 844 F.2d 1576, 1580 (Fed. Cir. 1988)). Although the prosecution history is helpful, it "often lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips, 415 F.3d at 1317.

In addition to using intrinsic evidence, courts may utilize extrinsic evidence, which includes "'expert and inventor testimony, dictionaries, and learned treatises.'" Id. (quoting Markman, 52 F.3d at 980). Although courts may use extrinsic evidence, "[i]n most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." Vitronics, 90 F.3d at 1583.

**B. Disputed Terms**

1. Disposed On

The Parties dispute the definition of the term "disposed on" in claim 1. "Disposed on" is used two times in claim 1 in the following manner:

> a body member having a first portion attached to a second portion via an integral hinge disposed there between;
> said first portion comprising side walls and a top face disposed on said backing member to define a merchandise compartment having an open end in one of said side walls;
> said second portion comprising side walls and a top wall disposed on said backing member to thereby define a closure for said open end, wherein said second portion pivots between an opened position where said merchandise compartment is exposed at said open end and a closed position where said merchandise compartment is closed by said second portion[.]

'746 patent, Ex. 1, at p. 12.

Rally asserts that "disposed on" means "put or arranged to be attached to; overlies."

Federal Mogul claims that the term should be constructed to mean "secured or affixed." Federal Mogul allegedly relies upon the specification and Rally uses a dictionary definition.

In the "Background of the Invention" section of the '746 patent, the specification discusses a general difficulty with windshield wiper packaging "when it is desired to provide blister packaging suitable for pegboard display, wherein the blister back can easily be opened and reclosed/resealed without apparent damage to the packaging itself." Id. at p. 10, Col. 1, lines 61-64. To address this issue, the specification explains that the '746 patent packaging "can be easily opened and reclosed without damages to the package, which can be affixed to the backing card in a tamper resistant fashion, and which can be affixed to the backing card while fully loaded." Id. at p. 10, Col. 2, lines 8-10. From this language in the specification, it is clear that Rally used the word "affixed" in lieu of the term "disposed on." In addition, the "Summary of the Invention" section describes part of the packaging as "[a] pair of first opposing side walls and an interconnecting end wall extend from the edges of the main body portion form, when the plastic assembly is attached to the backing plate, [such that it becomes] a container for the packaged merchandise." Id. at lines 24-27. There, Rally used the word "attached" instead of "disposed on." After reviewing the specification, it is clear that the '746 patent uses the words "affixed" and "attached" interchangeably with the term "disposed on" in claim 1. Accordingly, using intrinsic evidence, this Court constructs the term "disposed on" to mean "affixed or attached."

2. Closure System

The Parties are in contention as to the term "closure system." Rally proposes that the term "closure system" should be constructed to mean "a combination of parts which closes or

shuts." Federal Mogul suggests defining the term as "a first locking feature in the specific form of at least one projection on the door member and at least one mating recess on the merchandise compartment excluding the form of a ridge and a trough." The Court adopts neither construction.

This dispute as to the meaning of the term "closure system" revolves around whether claim 1 is comprised of a single or dual closure system. Rally contends that there is "at least" one closing feature, which is found on the extended portion, while Federal Mogul argues that claim 1 requires two closing features.

Claim 1 uses the term "closure system" as follows:

> a closure system for securing said second portion in said closed position, said closure system comprising at least one projection and at least one corresponding recess for receiving said at least one projection to define an interlocking friction-fit connection[.]

'746 patent, Ex. 1, at p. 13.

Claim 1 provides for "at least one projection and at least one corresponding recess." Id. Rally, therefore, concludes that "[t]he language of claim 1 does not require all four of the recesses and depressions shown in the drawings." Rally Opening Markman Brief, at p. 18. This Court disagrees.

Under Rally's proposed construction, claim 1 requires "a combination of parts" but does not state what parts. Rally's construction ignores that such "parts" must be "at least one projection and at least one recess." Under Rally's proposed meaning, any part, including a ridge or trough, is covered by claim 1. Moreover, Rally argues that claim 1 only requires "at least" one part. In other words, Rally alleges that claim 1 would cover a product that has only one projection and one recess or one ridge and one trough, thereby not requiring two closing features.

In proposing this construction, Rally asserts that the terms projection and recess are synonymous with ridges and troughs in claim 1. The specification refutes both of these arguments.

In the "Detailed Description of the Invention," the specification states that the "projections" on the '746 patent are elements 17a and 17b as shown in the diagram above. '746 Patent, Ex. 1., p. 13, Col. 3, lines 60-35. These projections "matingly engage the depressions 16a to lock the door . . . ." Id. The specification continues by describing how there are locking ridges and troughs and that "these elements 40, 42, 50, 52 serve to further hold the door portion 15 in the closed position . . . because the ridges 40, 42 and troughs 50, 52 add stability to [the] resilient characteristic of the entire assembly." Id. at Col. 2, lines 18-21. According to the specification, the dual closure system is comprised of elements 40, 42, 50, 52 (the ridges and troughs) and 16a, 16b, 17a, and 17b (the projections and recesses).

Rally's own specification states that the ridges and troughs are "additional to the locking system . . . ." Id. In essence, the dual closure adds to the stability of "the entire assembly." Id. For Rally to now argue that there is a single closure system, of only one recess or projection or a combination of parts, is in complete contradiction to the specification and its own "Detailed Description of the Invention." This "additional" locking system is clearly set forth in the "Detailed Description of the Invention," and provides ample intrinsic evidence that claim 1 requires two closure features in the "closure system." Rally cannot rely upon mere extrinsic evidence from the dictionary to escape the clear meaning of claim 1 as set forth in the specification.

Moreover, claim 9 of the '746 patent provides compelling evidence that claim 1 requires two closure features. Claim 9 sets forth in part:

8

> a closure system for securing said second portion in said closed position, said closure system comprising at least one projection and at least one corresponding recess for receiving said at least one projection to define an interlocking friction-fit connection; and
>
> a pair of locking ridges formed on one of said first and second portions and a pair of locking troughs formed on the other of said first and second portions, said locking ridges and troughs parallely extending away from said open end.

'746 patent, Ex. 1, at p. 13. From the plain language of claim 9, there are a "pair of locking ridges" and "a pair of locking troughs." Although claim 9 is not at issue, its language is relevant for this analysis. Claim 9 makes a clear distinction between the closure features consisting of "ridges" and "troughs" and the closing features consisting of "projections" and "recesses." Claim 9 is another example of how the '746 patent distinguishes projections and recesses from other elements. This delineation of the elements in claim 9 is consistent with the "Detailed Description of the Invention." Thus, claim one requires at least one projection and recess, not "a combination of parts" as proposed by Rally. Moreover, based upon the specification there are two closing features in the '746 patent, and the projection and recess would constitute one closing feature as required by claim 1.

In addition, Federal Mogul's proposed construction of the term is also incorrect. It uses the words "first locking feature," which would indicate a sequential order to the "closure system." That is not the case here. When one uses the "closure system," the dual closure may or may not occur simultaneously. The projection fits inside of the recess, but they do not "lock" in the ordinary use of that word. Moreover, the projections (17a and 17b) are located on the "door," and the recesses are on the "merchandise compartment." In addition, the location of where the recess and projection "mate" should not be incorporated into the construction of the term because the "closure system" can exist without actually being closed. In other words, it would be

9

incorrect to state that the recess and projection are always on the merchandise compartment. It is only when the door is closed and the projection enters the recess that such closure occurs. Accordingly, this Court constructs the term "closure system" in claim 1 to mean "one of two closing features in the form of at least one projection and at least one recess."

3.   Projection & Recess

The Parties disagree over the definitions of the terms "projection" and "recess." Rally relies on the dictionary definitions which, respectively, are "any projecting or protruding part" and an "indentation or depression or slot or hole." Federal Mogul asserts that they should be defined, respectively, as "a protruding part for mating with a corresponding recess" and "an indentation or depression for mating with a corresponding projection."

The term is used in claim 1 as follows:

> said closure system comprising at least one projection and at least one corresponding recess for receiving said at least one projection to define an interlocking friction-fit connection.

'746 patent, Ex. 1.

Based upon the context of the terms used in claim 1, the projection and recess are intended to be used together to form an "interlocking friction-fit connection." Indeed, it is not any projecting or protruding part or any indentation or depression; rather, the projection must fit within the recess. As described in the specification:

> In the closed position, the projections 17a matingly engage the depressions 16a to lock the door portion against the main body portion 14 and thereby close the access opening 30. Moreover, because the projections 17a and depressions 16a are locating in opposing fashion, the resilient nature of the side walls 16, 17 serve to reliantly retain the door portion 15 in the closed position.

'746 Patent, Ex. 1, Col. 3, line 63 - Col. 4, line 3.

If this Court were to adopt the overly broad definition proposed by Rally, the definition would include projections that do not fit into recesses. Consequently, the projection and recess would not be "matingly engage[d]." This is not in accordance with claim 1 or the specification. Thus, this Court constructs the terms projection and recess to mean "a protruding part for mating with a corresponding recess" and "an indentation or depression for mating with a corresponding projection," respectively, as proposed by Federal Mogul.

4. Closure Elements

The Parties are in contention over the term "closure elements." Rally proposes that it should be defined as "elements which close or shut." Federal Mogul contends the term means "a second locking feature distinct from the first locking feature and specifically located on the extended portion." The term is used in claim 1 as follows:

> wherein said backing member and said body member define an extended portion wherein said integral hinge is offset from said open end by a distance sufficient to include closure elements on said extended portion thereby interlocking said first portion to said second portion.

'746 patent, Ex. 1.

To further clarify the meaning of "closure elements," during the prosecution history, Rally filed an Amendment and explained the following:

> Claim 1 has been amended to distinguish this invention over the prior art because the present invention provides a reclosable blister pack having an extended portion that extends away from the open end (access opening 30) in such a manner that the integral hinge 20 is offset from the open end 30 by a distance sufficient to include closure elements (e.g. 40, 42, 50, 52) on the extended portion thereby interlocking said first portion to said second portion.

Amendment (ECF No. 48-4), Ex. 4., at p. 7.

The closure elements, therefore, refer to 40, 42, 50, and 52 as shown in Figure 2 above.

11

In the "Detailed Description of the Invention," Rally also states that:

> These elements 40, 42, 50, 52 serve to further hold the door portion 15 in the closed position shown in FIG 1 because the ridges 40, 42 and troughs 50, 52 add stability to resilient characteristics of the entire assembly. For example, the ridges 40, 42 and troughs 50, 52 increase the resilient interface between the projections 17a, 17b and the depressions 16a, 16b. In addition, the overall strength of the access opening 30 is enhanced. Moreover, the ridges 40, 42 and troughs 50, 52 add to the frictional resistance holding the door portion 15 in the closed position. Of course, the exact design, size and arrangement of the ridges 40, 42 and troughs 50, 52 may vary from the arrangement shown in FIGS 1 and 2 without departing from the spirit and scope of the invention.

'746 patent, Ex. 1.

Rally uses the words "to further hold," which indicates that it is an additional or second mechanism used to "hold the door portion 15 in the closed position." In addition, these "elements" are repeatedly referred to in the "Detailed Description of the Invention" as "ridges" and "troughs." Both Parties agree that these "closure elements" are located on the extended portion. Federal Mogul incorrectly uses the word "lock" without directing this Court on how the ridge locks into the "trough." The "ridges" secure into the "trough," but they do not "lock" as that word is used in its ordinary and common meaning. Moreover, it is superfluous to define this closing feature as "distinct from the first locking feature" because to do so would require every element to distinguish and define itself as "distinct." For instance, the definition of element 42 in Figure 2 is a "ridge." Under Federal Mogul's logic, element 40 in Figure 2 should be defined as a "ridge distinct from ridge 42." This Court will not define each term as "distinct." Thus, this Court constructs the term "closure elements" as "ridges and troughs that provide an additional closing feature, which are located on the extended portion."

5.   Distance Sufficient to Include Closure Elements

The Parties are in disagreement as to the definition of "distance sufficient to include closure elements." Rally argues that the term should be defined as "a space or size adequate to include closure elements." Federal Mogul asserts that the term is "not susceptible of construction." Claim 1 uses this language as follows:

> wherein said backing member and said body member define an extended portion wherein said integral hinge is offset from said open end by a distance sufficient to include closure elements on said extended portion thereby interlocking said first portion to said second portion.

'746 patent, Ex. 1.

Federal Mogul argues that this term is "soluably ambiguous" and "indefinite." Federal Mogul then undermines its own argument that such term is ambiguous by explaining, "the distance that the hinge is offset must yield an extended portion that allows receipt of closure elements." Fed. Mogul Markman Briefing p. 19. In short, Federal Mogul defined the term. Based upon Federal Mogul's own well reasoned deduction, it is not "soluably ambiguous" or "indefinite." Rather, as Rally states, the common meaning of this term, which is in accordance with claim 1 and the specification, is "a space or size adequate to include closure elements." This Court adopts that construction of the term.

### III. CONCLUSION

ORDERED AND ADJUDGED that the disputed terms of the '746 patent are to be construed as described above.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this 21st day of June, 2011.

                                         /s/ K. Michael Moore
                                         K. MICHAEL MOORE
                                         UNITED STATES DISTRICT JUDGE

cc: All counsel of record