IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23791-CIV-MOORE/TORRES

RALLY MANUFACTURING, INC.,

      Plaintiff/Counterclaim Defendant,

vs.

FEDERAL MOGUL CORPORATION,

      Defendant/Counterclaim Plaintiff.

_____/

## ORDER GRANTING IN PART DEFENDANT FEDERAL MOGUL CORPORATION'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFF RALLY'S MOTION FOR PARTIAL SUMMARY JUDGEMENT; ORDER GRANTING MOTION FOR DISMISSAL OF COUNT IV OF FEDERAL MOGUL'S COUNTERCLAIMS

THIS CAUSE came before the Court upon Plaintiff Rally's Motion for Partial Summary Judgment (ECF No. 53); Rally's Memorandum in Support of its Motion for Partial Summary Judgment (ECF No. 55); Rally's Statement of Undisputed Material Parts[sic] in Support of its Motion for Partial Summary Judgment (ECF No. 56); Federal Mogul's Motion for Summary Judgment (ECF No. 58); Federal Mogul's Statement of Material Facts to Which No Genuine Issue Exists (ECF No. 59); Federal Mogul's Response to Rally's Motion for Partial Summary Judgment Relative to Counts III and IV of Federal Mogul's Counterclaims (ECF No. 60); Federal Mogul's Counter-Statement of Undisputed Material Facts in Opposition to Rally's Motion for Partial Summary Judgment (ECF No. 61); Motion for Dismissal of Count IV of Federal Mogul's Counterclaims (ECF No. 62); Plaintiff's Opposition to Defendant's Motions for Summary Judgment (ECF No. 67); Rally's Statement of Material Facts in Dispute in Support of its Opposition to Pylon's Motion for Summary Judgment (ECF No. 68); Rally's Memorandum in

Reply to Federal Mogul's Response to Rally's Motion for Partial Summary Judgment Relative to Counts III and IV of Federal Mogul's Counterclaims (ECF No. 69); Federal Mogul's Reply to its Motion for Summary Judgment (ECF No. 71); Federal Mogul's Exhibits Under Seal in Support of its Reply to its Motion for Summary Judgment (ECF No. 73); Rally's Memorandum in Response to Federal Mogul's Motion to Dismiss Count IV of the Counterclaims (ECF No. 80); Federal Mogul's Reply to Opposition to Motion for Dismissal of Count IV of Federal Mogul's Counterclaims (ECF No. 89); Federal Mogul's Motion to File Under Seal Exhibit E of its Reply to Opposition to Motion for Dismissal of Count IV of Federal Mogul Counterclaims (ECF No. 90); and Rally's Notice of Filing Surreply (ECF No. 95).

## I.   BACKGROUND[1]

This is a patent infringement case where Plaintiff Rally Manufacturing, Inc. ("Rally") is suing Federal Mogul Corporation ("Federal Mogul") for allegedly infringing upon U.S. Patent No. 6,279,746 (the "'746 patent") by importing, selling, distributing, and offering to sell packaging for windshield wiper blades. Rally's Complaint includes one count of patent infringement against Federal Mogul pursuant to 35 U.S.C. § 271 for alleged infringement of claim 1 of the '746 patent. Federal Mogul has brought counterclaims for false patent marketing, infringement of U.S. design patent D372,012, and seeks declarations that the '746 patent is not infringed and that the '746 patent is invalid.

---

[1] The facts herein are taken from Federal Mogul Corporation's Statement of Material Facts to which No Genuine Issue Exists (ECF No. 59), Federal Mogul's Counter-Statement of Undisputed Material Facts in Opposition to Rally's Motion for Partial Summary Judgment (ECF No. 61), Rally's Statement of Material Fact in Support of its Opposition to Pylon's Motion for Summary Judgment (ECF No. 68), and Rally's Statement of Material Facts in dispute of its Opposition to Pylon's Motion for Summary Judgment (ECF No. 68). The facts are viewed in a light most favorable to the non-moving party.

2

As discussed in this Court's Claim Construction Order, the '746 patent (U.S. Patent No. 6,279,746) is a "Reclosable Blister Pack," which is a plastic package, used to store and hold windshield wiper blades. Rally, the owner of the '746 patent, filed its request for a patent on March 22, 2000, and the '746 patent was issued on August 28, 2001. Rally claims that Federal Mogul's packaging, which is known as the DURALAST, is infringing on the '746 patent. Rally contends that Federal Mogul is infringing on the '746 patent by "making, using, selling, offering to sell, and/or importing wiper blades within packaging." Diagrams of the '746 patent and the DURALAST are provided below:



The '746 patent                    The DURALAST

Federal Mogul has brought four counterclaims against Rally: for declaration that the '746 patent is not infringed (Count I), for declaration that the '746 patent is invalid (Count II), for false marking under 35 U.S.C. § 292 (Count III), and for alleged infringement of U.S. Patent D372,012 (the '012 patent) (Count IV).[2]

---

[2] Since filing a counterclaim in this matter, Federal Mogul has requested a voluntary dismissal without prejudice as to Count IV under Fed. R. Civ. P. 41(a)(2). See Brief in Support of Mot. for Dis. of Count IV of Fed. Mog.'s Counterclaims. Rally opposes such relief.

## II.   STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The Judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment may be entered only when there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations of denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III. ANALYSIS

Federal Mogul has brought a Motion for Summary Judgment as to four issues: (1) that the packages of Federal Mogul's DURALAST wiper blades do not infringe the '746 patent, (2) that claim 1 of the '746 patent is invalid based on the prior art of the ACD Tridon Package, (3) that claim 1 of the '746 patent is invalid for indefiniteness under 35 U.S.C. § 112, and (4) that Rally has forfeited its right to damages due to licensing of the '746 patent without control over marking and improper marking. Fed. Mog.'s Mot. for Summ. Judg. (ECF No. 58). Rally has also filed a Motion for Partial Summary Judgment as to Count III (false marking) and Count IV (infringement of the '012 patent) of Federal Mogul's counterclaims.

### A.   Federal Mogul's DURALAST Does Not Infringe the '746 Patent

Federal Mogul seeks a declaration that the DURALAST does not infringe the '746 patent. Rally is claiming that the DURALAST does infringe on independent claim 1 and dependant claims 3, 4, and 6. Rally first argues that Federal Mogul's DURALAST is literally infringing on the '746 patent.

"To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." Rohm and Haas Co. v. Brotech Corp., 127 F.3d 1089, 1092 (Fed. Cir. 1997) (citing Lemelson v. United States, 752 F.2d 1538, 1551 (Fed. Cir. 1985)). In order to prove a claim for literal infringement, the moving party must do so by "proof by a preponderance of the evidence." Id. (citing SSIH Equip S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 376 (Fed. Cir. 1983)).

To begin, it is helpful to review claim 1 in the '746 patent, which states:

What is claimed is:

1. A reclosable package comprising:

>  a backing member;
>
>  a body member having a first portion attached to a second portion via an integral hinge disposed there between;
>
>  said first portion comprising side walls and a top face disposed on said backing member to define a merchandise compartment having an open end in one of said side walls;
>
>  said second portion comprising side walls and a top wall disposed on said backing member to thereby define a closure for said open end, wherein said second portion pivots between an opened position where said merchandise compartment is exposed at said open end and a closed position where said merchandise compartment is closed by said second portion;
>
>  a closure system for securing said second portion in said closed position, said closure system comprising at least one projection and at least one corresponding recess for receiving said at least one projection to define an interlocking friction-fit connection,
>
>  wherein said backing member and said body member define an extended portion wherein said integral hinge is offset from said open end by a distance sufficient to include closure elements on said extended portion thereby interlocking said first portion to said second portion.

'746 patent, Ex. 1, at p. 12. The Parties were in dispute over six terms in claim 1. The Court has previously constructed the terms in its Claim Construction Order and will apply such definitions here.

Federal Mogul argues that claim 1 of the '746 patent requires "two different locking features." See Fed. Mog.'s Mot. for Summ. Judg. at p. 6. As this Court explained in its Claim Construction Order, the "closure system" in claim 1 is constructed to mean "two closing features in the form of at least one projection and at least one recess." Hence, Federal Mogul is correct in stating that the '746 patent has a dual closure system. As stated in claim 1, the "closure system" must contain "at least one projection and at least one recess."

The DURALAST does not infringe on the '746 patent because the DURALAST does not contain every element or limitation of the '746 patent's "closure system." First, the DURALAST

has only one closing feature. The DURALAST's closing elements are located on the extended portion of the packaging and are comprised of two ridges and two troughs. When the door of the extended portion closes, the ridges enter the troughs. The ridges and troughs allow the extended door to remain closed. In comparing the DURALAST to the '746 patent, the '746 patent requires two closing features whereas the DURALAST only has one – ridges and troughs. The DURALAST packaging, therefore, does not meet each and every element or limitation of its claim.

In addition, the DURALAST does not contain a "projection" or "recess." This Court has defined the words "projection" and "recess," respectively, to mean "a protruding part for mating with a corresponding recess" and "an indentation or depression for mating with a corresponding projection." There is no dispute that the '746 patent has a recess or depression located on the merchandise compartment. Further, the '746 patent has projections on the door of the packaging. Claim 1 of the '746 patent requires these elements and clearly sets forth that "said closure system comprising at least one projection and at least one corresponding recess for receiving said at least one projection to define an interlocking friction-fit connection." '746 patent, Ex. 1. In contrast, the DURALAST contains two ridges and two troughs but does not have a projection or recess located anywhere on its packaging.

Rally argues that "one must conclude that the accused device [the DURALAST] includes projections and recesses on the extended portion." Pl.'s Opp. to Mot. for Summ. Judg. at p. 11. In doing so, Rally attempts to interchange the terms "projection" and "recesses" with "ridge" and "trough." However, Rally clearly distinguished "ridges" and "troughs" from "projections" and "recesses" in the specification of the '746 patent. In the "Detailed Description of the Invention"

7

section, the '746 patent states that:

> In addition to the locking system formed by the projections 17a, 17b and the depressions 16a, 16b the present invention further comprise locking ridges 40, 42 for parallely[sic] extend away from the access opening 30 on each side of the peg hole 12. Corresponding locking troughs 50, 52 are provided in the door portion 15, and these locking troughs 50, 52 are sized to frictionally engage the locking ridges 40, 42 as shown in Fig. 1. These elements 40, 42, 50, 52 serve to further hold the door portion 15 in the closed position shown in FIG 1 because the ridges 40, 42 and troughs 50, 52 add stability to resilient characteristics of the entire assembly. For example, the ridges 40, 42 and troughs 50, 52 increase the resilient interface between the projections 17a, 17b and the depressions 16a, 16b. In addition, the overall strength of the access opening 30 is enhanced. Moreover, the ridges 40, 42 and troughs 50, 52 add to the frictional resistance holding the door portion 15 in the closed position. Of course, the exact design, size and arrangement of the ridges 40, 42 and troughs 50, 52 may vary from the arrangement shown in FIGS 1 and 2 without departing from the spirit and scope of the invention.

'746 patent, Ex. 1, ¶ 4, lines 9-31.

Analyzing the '746 patent's specification, Rally clearly labels "projections" and "recesses" (or depressions) as separate elements from "ridges" and "troughs." The DURALAST does not contain projections, recesses, or depressions. Rather, it has only ridges and troughs. These undisputable facts demonstrate that the DURALAST does not meet each and every element or limitation of the '746 patent. See Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir. 1991) (stating that "the failure to meet a single limitation is sufficient to negate infringement of [a] claim"). Thus, the DURALAST does not literally infringe the '746 patent.

Alternatively, Rally argues that Federal Mogul has infringed based upon the doctrine of equivalents. "Under the doctrine of equivalents, an accused product which does not literally infringe a claim may infringe, if it performs substantially the same function in substantially the same way to obtain the same result." Id. at 1539 (internal quotation marks and citation omitted). To show that a product performs "in substantially the same way," one must demonstrate that "all

8

the limitations of the claim must be satisfied at least equivalently." Id. (citing Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 798 (Fed. Cir. 1990)).

Rally argues in a conclusory fashion that "the accused device does in fact contain every element of the claimed invention." Pl.'s Opp. to Mot. for Summ. Judg. at p. 13. This Court disagrees. As explained above, the DURALAST does not satisfy the limitations of the '746 patent equivalently. See Laitram Corp., 939 F.2d at 1539. The DURALAST does not have any projections or recesses that are patented in claim 1 of the '746 patent. Moreover, the DURALAST is comprised of a single closure system compared to the '746 patent's dual closure system. The products contain different elements and the '746 patent's dual closure system, which "add[s] stability to resilient characteristics of the entire assembly," is not part of the DURALAST packaging. '746 patent, Ex. 1. Hence, the DURALAST does not perform the same function as the '746 patent in substantially the same way. As such, Federal Mogul's DURALAST does not infringe the '746 patent under the doctrine of equivalents.

Accordingly, this Court grants Federal Mogul's first issue in its Motion for Summary Judgment.

B.  The '746 Patent is Valid

Federal Mogul requests this court to find that the '746 patent is invalid due to prior art. Specifically, Federal Mogul alleges that based upon its construction of claim 1, the ACD Tridon packaging for windshield wipers contained all of the elements of the '746 patent prior to the '746 patent being issued. Although the Parties do not dispute that the ACD Tridon is prior art to the '746 patent, such patents have their own distinct elements and the '746 patent is not invalid.

9

"Because a patent is presumed to be valid, the party asserting invalidity has the burden of showing invalidity by clear and convincing evidence." WMS Gaming, Inc. v. Int'l Game Technology, 184 F.3d 1339, 1355 (Fed. Cir. 1999) (citing Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH, 139 F.3d 877, 881 (Fed. Cir. 1998)) (internal citation within text omitted); see also Microsoft Corp. v. Limited Partnership, 2011 WL 2224428, No. 10-290 (June 9, 2011) (rejecting defendant's "contention that a defendant need only persuade the jury of a patent invalidity defense by a preponderance of the evidence" and holding that invalidity must "be prove[n] by clear and convincing evidence"). Federal Mogul has failed to demonstrate that the ACD Tridon has each and every element of the '746 patent. Indeed, the ACD Tridon does not. The '746 patent contains projections and recesses where the ACD Tridon only has ridges and troughs. As stated above, claim 1 of the '746 requires "at least one projection and recess," and the ACD Tridon has none. Federal Mogul points to no direct evidence that the '746 patent is invalid besides providing this Court with a diagram of the ACD Tridon. In failing to provide this Court with evidence as to its allegations, Federal Mogul has not overcome the presumption that the '746 patent is valid. There are no genuine issues of a material fact as to this issue and no reasonable juror could find that the '746 patent is invalid based upon Federal Mogul's assertions. Federal Mogul's allegations are unsupported by the evidence, which overwhelmingly demonstrates that the '746 patent is valid. Accordingly, this Court does not grant Federal Mogul's second issue in its Motion for Summary Judgment under this theory of invalidity.

In addition, Federal Mogul also argues that the '746 patent is invalid due to indefiniteness. Federal Mogul alleges that the term "extended portion" in claim 1 is indefinite and violates 35 U.S.C. § 112. This Court disagrees.

Pursuant to 35 U.S.C. § 112, "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. "The definiteness requirement . . . does not compel absolute clarity." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005). Indefiniteness will only be found where the terms are "not amenable to construction" or "insolubly ambiguous." Id. (citing Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1353 (Fed. Cir. 2003)) (citation omitted). "Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning." Id.

Claim 1 of the '746 patent states:

> wherein said backing member and said body member define an extended portion wherein said integral hinge is offset from said open end by a distance sufficient to include closure elements on said extended portion thereby interlocking said first portion to said second portion.

'746 patent, Ex. 1.

This Court defined the term "extended portion" to mean "a space or size adequate to include closure elements." See Claim Construction Order. Federal Mogul provides no evidence and makes only conclusory allegations as to why this term should be found indefinite. As Rally correctly points out, "there was no indefiniteness found by the Examiner." Moreover, after reading the specification and reviewing the '746 patent, this Court was able to discern the meaning of the term. As such, the term "extended portion" was amenable to construction and not ambiguous and the '746 patent is valid. Federal Mogul's Motion for Summary Judgment as to the third issue is therefore denied. Accordingly, Count II of the Federal Mogul's counterclaims is dismissed.

11

### C.     Whether Rally Forfeited Its Rights to Damages Due to Licensing the '746 Patent

Federal Mogul argues that Rally forfeited its rights to damages because Rally allegedly did not properly mark its windshield packaging products with the patent number as required by U.S. Patent Law 35 U.S.C. § 287. This issue will not be addressed because this Court has determined that Federal Mogul did not infringe the '746 patent. See Section A. The issue of what damages Rally should recover is moot. Accordingly, Federal Mogul's request is denied as moot.

### D.     Whether Rally Intentionally Marked its Products Falsely

In Count III of Federal Mogul's counterclaims, it alleges that Rally has improperly marked packaging for windshield wipers with the '746 patent number. Federal Mogul asserts that Rally knew that the '746 patent was invalid, knowingly marked its products that were not covered by the '746 patent, and knowingly marked packaging with "other patents pending" when the patent was not pending. Rally has moved for summary judgment as to these claims arguing that the allegations are incorrect and unfounded in any evidence.

35 U.S.C. § 292 sets forth the "Remedies for Infringement of Patent[s]." 35 U.S.C. § 292. 35 U.S.C. § 292(a) state in part that:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public; or
>
> Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public . . .
>
> Shall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). "The marking statute serves three related purposes: 1) helping to avoid

innocent infringement; 2) encouraging patentees to give notice to the public that the article is patented; and 3) aiding the public to identify whether an article is patented." Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1443 (Fed. Cir. 1998) (internal citations within the text omitted). "[T]he plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent)." Clontech Laboratories, Inc. v. Invitrogen, Corp., 406 F.3d 1347, 1353 (Fed. Cir. 2005). Without evidence "of reasonable belief, no liability under the statute ensues." Id.

This Court already determined that Federal Mogul has failed to show that the '746 patent is invalid. Therefore, this Court finds no merit in Federal Mogul's first argument that Rally knowingly placed an invalid patent on its packaging. To the contrary, the '746 patent is presumed valid, and Federal Mogul has failed to rebut that presumption.

In addition, Federal Mogul claims that Rally knowingly used the '746 patent on products that are not covered by such patent and falsely designated products with "other patents pending." In order to prove these claims, Federal Mogul must show that the "(1) marking [of] an unpatented article and (2) intent to deceive the public." See Forest Group, Inc. v. Bon Tool co., 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing Clontech Laboratories, Inc., 406 F.3d at 1353). The Federal Circuit has defined intent to deceive to mean "a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." Id. at 1352. In determining "intent to deceive," "objective standards control and the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the

inference that there was a fraudulent intent." Id. (citing Norton v. Curtiss, 433 F.2d 779, 795-69 (1970) (internal quotations omitted)). Although an objective standard is used to determine a party's intent, "[t]he question of whether conduct rises to the level of statutory deception is a question of fact." Id. at 1352.

Federal Mogul alleges that Rally improperly used the '746 patent on two of its products: the WeatherGuard and O.E.Q. Federal Mogul asserts that these two products have only a single closure system and that the '746 patent requires a dual closure system under claim 1 and claim 9. By marking the WeatherGuard and O.E.Q. with the '746 patent, Federal Mogul contends that Rally knew that such products were not covered by the '746 patent and intended to deceive the public. Rally admits that it has marked the WeatherGuard and O.E.Q. with the '746 patent, but Rally contends that these products are covered by the '746 patent and that it did not mark their packaging falsely with the purpose of deceiving the public.

In reviewing the elements of the Weatherguard, it has two ridges and two troughs on the extended portion of the packaging. The ridges frictionally-fit into the troughs for the purpose of closing the packaging. The Weatherguard has no projections or recesses anywhere on the packaging. Since there are no projections and recesses on the Weatherguard, this Court finds that Rally marked the Weatherguard falsely. No reasonable person could find that the product has anything resembling a projection or recess as defined by the '746 patent, and therefore, as a matter of law, Rally has intentionally marked the Weatherguard with a false patent.

The next issue is whether Rally did so with the intent to deceive the public. The Weatherguard is clearly distinct from what is covered in the '746 patent. Indeed, the '746 patent

bears no resemblance to the Weatherguard. Notwithstanding the issue of whether the '746 patent has a single or dual closure system, the Weatherguard has no projections or recesses, which are clearly required by the '746 patent. As such, there is a genuine dispute of a material fact as to whether Rally intentionally deceived the public into believing that the Weatherguard was covered by the '746 patent.

The Parties have not provided a diagram or sufficient evidence of the O.E.Q.'s elements for this Court to review. Thus, there is a genuine issue of material fact as to whether the O.E.Q. is covered by the '746 patent and if Rally falsely used such patent on the O.E.Q. with the intent to deceive the public. Consequently, Count III of Federal Mogul's counterclaim will not be dismissed.

### E. Federal Mogul Seeks to Dismiss Count IV of Its Counterclaim

In Count IV of Federal Mogul's counterclaims, it brings a cause of action against Rally for infringing on U.S. Patent No. D372,012 ("'012 Patent" or "Windshield Wiper Unit"). Federal Mogul has requested that Count IV of its counterclaim be dismissed without prejudice because it "will serve to narrow claims and minimize the waste of the parties and the Court's resources." Mot. for Dismissal of Count IV of Fed. Mog.'s Counterclaims at p.1. Rally argues that this claim should be dismissed with prejudice and that Federal Mogul lacks standing to bring this cause of action.

"The district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2). Pontenberg v. Boston Scientific Corp., 252 F.3d 1253, 1256 (11th Cir. 1001) (citing McCants v. Ford Motor Co., Inc., 781 F.2d 855, 857 (11th Cir. 1986)).

Courts will generally grant a voluntary dismissal "unless the defendant will suffer legal prejudice" besides the possibility of another lawsuit. Id. The Court should weight the "equities" in the case and ask "[w]ould the defendant lose any substantial right by the dismissal." Id. at 1256-57. This Court agrees with Federal Mogul that dismissal of this claim will "minimize waste" in this lawsuit. The fourth counterclaim pertains to the '012 patent, which is unrelated to the issues between the '746 patent and the DURALAST. Rally has not shown any compelling reason as to how it would be prejudiced by a voluntary dismissal besides potential future litigation. That alone does not persuade this Court to deny a voluntary dismissal. Accordingly, Federal Mogul's fourth claim is dismissed without prejudice.

Consequently, the only remaining cause of action is Federal Mogul's counterclaim in Count III against Rally for false patent marking.

## IV.   CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant Federal Mogul's Motion for Summary Judgment is GRANTED IN PART (ECF No. 58). It is granted as to Count I in that the '746 patent is not infringed by the DURALAST, however, it is denied in that Count II is dismissed and the issue of whether Rally has forfeited its damages is denied as moot. Rally's Motion for Partial Summary Judgment is DENIED (ECF No 53).

Federal Mogul's Motion for Dismissal of Count IV of its Counterclaims is GRANTED (ECF No. 62). Any other pending motions are denied as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 21st day of June, 2011.

*/s/ K. Michael Moore*

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record